United States District Court
Southern District of Texas
**ENTERED**
April 01, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERALD MARSHALL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-03438 |
| | § | |
| BOBBY LUMPKIN-DIRECTOR TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## MEMORANDUM AND ORDER

### I.     INTRODUCTION

The petitioner, Gerald Edward Marshall, filed this federal petition for a writ of habeas corpus challenging his state court conviction and sentence of death arising out of a capital murder that he was found to have participated in in Houston, Texas in 2003.  *See* [DE 19].  Also before the Court are Marshall's amended petition [DE 185], the respondent's, the Texas Department of Corrections, Director's, response [DE 191] and Marshall's reply [DE 196].  All state court proceedings have been exhausted and the matter is properly before the Court; hence, the petition is ripe for adjudication.

## II.    FACTUAL BACKGROUND

### A.  The Scene

Although the petitioner raises issues in his petition that challenge the facts underlying his conviction, the jury's verdict, the appeal(s) and all habeas proceedings and conclusions, rest on the following factual summary.

Christopher Dean, an intellectually disabled male adult, reported for work on the evening of May 13, 2003, at the Whataburger restaurant near the Northwest Mall where he had been employed for over 13 years.  He had proven to be a faithful employee, even handling the chores of cashier when requested, particularly in the absence of the manager, Greg Love[1].  It was Greg Love's duty, as manager, however, to handle the restaurant safe and cash.  Later in Dean's shift, Love informed the staff, consisting of Dean and two other employees, that his brother had been shot and that he was leaving but would return shortly.  Love did not return as promised and had left the restaurant's cash in the manager's office outside the safe.  Around 2:00 a.m., the staff locked the entrance to the restaurant and began taking orders only through the drive-thru window.

At around 4:00 a.m. while Dean was working the drive-thru window, three men appeared at the window as though they were about to place an order.  They were later identified as Gerald "Tank" Marshall, Ronald "Bo" Worthy and Kenny Calliham.  Calliham was behind the wheel, Marshall was in the backseat and Worthy occupied the front passenger seat.  As Dean leaned through the drive-thru window to take the man's order, Marshall began grabbing at Dean while pointing a gun at him.

Dean pulled away from Marshall in retreat.  Marshall then forced his way through the drive-thru window and entered the restaurant. At some point, Worthy exited the vehicle as though

---

[1] Greg Love was an indicted co-conspirator along with Gerald Marshall, Ronald Worthy and Kenny Calliham.

he was going to join Marshall in the restaurant.  Nevertheless, Marshall was successful.  Dean's two co-works fled the area and hid themselves in spaces at the back or rear of the restaurant.  The record is unclear, but reflects that Marshall forced Dean to open the backdoor in order for Worthy to enter.[2]

Marshall caught up to Dean before he could escape and, while holding a gun on him, demanded the restaurant's cash.  Dean's co-employees could hear the exchange between Marshall and Dean as Dean protested that he could not open the safe.  Marshall became impatient with Dean and shot him.  Neither of Dean's co-worker's actually saw the person who fired the shot as their view was partially obstructed.  Dean died from a single gunshot wound to his head.

### B.  The Investigation

There was no physical or forensic evidence at the scene of the crime that pointed to the men who were later accused of committing the offenses.  However, a tip relayed through Crime Stoppers eventually led police officers to Marshall believing him to be a participant in the crime.  However, Marshall was arrested on an unrelated misdemeanor offense and, while in custody, was questioned about his knowledge of the robbery/murder at the restaurant.  He gave two statements, the sum total of which was that he had heard about the crime and admitted that he, Worthy and Calliham had visited the restaurant.  However, he denied entering the restaurant and shooting Dean.

Shortly, thereafter, Calliham surrendered to police, gave a statement, and agreed to cooperate in the investigation.  He admitted that he was the drive of the vehicle and identified

---

[2] This detail is irrelevant except that the presence of Worthy in the restaurant at or near the time that Dean was shot becomes a point of contention, by Marshall as to who, in fact, shot Dean.

3 / 26

Marshall as the shooter.  He also stated that Worthy had left the car during the robbery, but did not state whether Worthy had actually entered the restaurant.

The State of Texas ("State") charged Marshall, Worthy and Calliham with offenses related to the robbery/murder.  Specifically, Marshall was charged and later convicted of Capital Murder and now seeks relief by his federal writ.

### C.  The Trial Testimony and Direct Appeal

The State chose to proceed to trial against Marshall and utilize Calliham as a cooperating witness.  Calliham's testimony coupled with Dean's co-worker and an inmate all identified Marshall as the shooter.  The sum of the Courtroom testimony was that Worthy entered the restaurant but left out before Marshall shot Dean.  In addition to the testimony of Marshall's co-defendants, Marshall's girlfriend implicated him in the robbery/murder, during the investigation, based on statements made to her by Marshall after the crime was broadcasted on the local news.

On November 9, 2004, the jury found Marshall guilty of Capital Murder and, by separate questions during the punishment phase, determined that Marshall should be put to death for his role in the robbery/murder of Dean.

After the trial court denied Marshall's request for a new trial, he appealed the judgment of conviction directly, to the Texas Court of Criminal Appeals ("TCCA"), pursuant to Tex. Code Crim. Pro. Art 37.071, § 2(h).  Marshall's appellate counsel raised 13 grounds of error; all of which were denied.  On December 20, 2006, the TCCA issued its opinion affirming Marshall's conviction.  *Marshall v. State*, 210 S.W. 3d 618 (Tex. Crim. App. 2006).  Marshall appealed that ruling to the United States Supreme Court in petition for a writ of certiorari.  The Supreme Court refused to grant a writ.  *See Marshall v. Texas*, 552 U.S. 842 (2007).  He then returned to the trial court to begin a state writ process.

### D.  The State Writ Application Process

On July 5, 2006, Marshall filed an application for state habeas relief.  In his state habeas, he raised four grounds for relief.  However, while that petition was pending, he filed a bevy of motions, *pro se*, attempting to add additional grounds to the four under consideration.  A total of seven grounds was considered and were taken up by the trial court.

The trial court adopted the State's proposed findings and conclusion and denied all requested relief on July 18, 2014.  Thereafter, the TCCA in its opinion, denied all relief on November 19, 2014, while dismissing Marshall's *pro se* filings.  *See Ex Parte Marshall*, 2014 WL6462907 (Tex. Crim. App., November 19, 2014).

Next, Marshall filed an application for federal writ relief on November 19, 2015.  This Court stayed consideration of the writ permitting requested limited discovery on certain of Marshall's grounds for writ relief.  After an extended period, the Court pressed counsel for Marshall concerning going forward resulting in the filing of an amended writ petition on February 28, 2020.

The State filed a motion for summary judgment, followed by Marshall's second motion for a stay seeking additional time for additional discovery.  Based on Marshall's discovery and what might be called unexhausted grounds for relief, he requested and was permitted to return to state courts for consideration of those allegedly exhausted grounds.  Again, the Court stayed the case. The TCCA treated the new grounds as a successive writ describing the process as an abuse of the process and denied all requested relief.  *See Ex Parte Marshall,* 2022WL156894 (Tex. Crim. App., May 18, 2022.  This last writ application to the TCCA was designed to ensure that all of Marshall's grounds for a federal writ had been presented to the TCCA.  These grounds represented issues that Marshall's state writ counsel had failed to adopt and present in his state writ.

This Court then reopened Marshall's federal writ case with the filing of his second amended complaint. His first amended writ raised 16 grounds for relief. However, his second amended application raised only 13 grounds abandoning three of the 16 set out in his first amended writ application. Therefore, the Court determines that three dropped grounds are abandoned.

### III.    MARSHALL'S GROUNDS FOR WRIT RELIEF

Marshall presents 13 grounds in his second amended petition. To the extent that any of his ground addresses the same or a related ground, they will be combined to avoid repeated factual and/or legal discussions.

The 13 grounds are stated as follows: (1) the State violated Marshall's rights by using false testimony at the guilt and penalty stages of the trial; (2) the State violated his rights by employing inconsistent theories as to how and/or who committed the crime; (3) the State suppressed exculpatory and impeachment evidence; (4) trial counsel was ineffective in his investigation and preparation for the guilt phase of the trial; (5) similarly, trial counsel ineffectively investigated and prepared for the penalty phase of the trial; (6) the cumulative effect of trial counsel's ineffectiveness and the State's "due process" errors violated his rights; (7) racial bias tainted Marshall's criminal prosecution and trial; (8) the trial court erred in admitting his second statement into evidence when he did not validly waive his right to remain silent; (9) the trial court violated his rights by admitting his second statement into evidence because it was made in response to a false promise of leniency; (10) trial counsel failed to move to suppress his statements based on an illegal arrest; (11) the trial court violated his rights by admitting autopsy testimony; (12) he is actually innocent; and (13) the state trial judge was biased against him.

The State responded to Marshall's petition arguing that the procedural law governing state felony writs preclude federal consideration of many of Marshall's grounds of error. Alternatively, the State argues, the grounds of error are without merit. Marshall filed a reply.

## IV.    LEGAL STANDARDS

The federal writ of habeas corpus exists to free a person who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, a federal writ that reviews a state court conviction is guided by the AEDPA. *See White v. Wheeler,* 577 U.S. 73, 77 (2015). Legal precedent teaches that "a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 582 U.S. 521, 527 (2017); *see also* 28 U.S.C. § 2254(b). Additionally, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 582 U.S. at 527. "These requirements ensure that the state courts have the first opportunity to correct any error with a state conviction and that their rulings receive due respect in subsequent federal challenges." *Skinner v. Switzer*, 562 U.S. 521, 541-42 (2011).

The AEDPA's requires that a petitioner show that the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or, that its decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1),(2). Hence, a federal habeas court presumes that the underlying factual determinations made by the state court are correct, unless the inmate "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003); *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir.

2004) [holding that "[a]s a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit."]].  *See also, Freeney v. Davis,* 737 F.Appx. 198, 205-06 (5th Cir. 2019).

With those review standards in mind, the Court turns to the grounds presented by Marshall in his federal petition.  First, the Court finds that Marshall exhausted grounds one through seven, twelve, thirteen, and most of ground three in his successive state habeas application.  Because the TCCA dismissed that application as an abuse of writ under Tex. Code Crim. Pro. art. 11.071 § 5, Marshall must overcome the AEDPA's procedural bar before the Court may address those grounds.  *See* 28 U.S.C. § 2254(a)(1), (2) and §(e)(1).

Marshall also raised grounds eight through eleven, and part of claim three, in a manner that allowed the state courts to adjudicate the merits.  The Court will first address any procedurally proper grounds before deciding whether federal review is available for the remainder.

## V.    PROCEDURALLY PROPER CLAIMS

The TCCA denied, on the merits, grounds eight through eleven, and part of ground three. With regard to those grounds, Marshall must show that the TCCA's decision was contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

### A.  *Marshall's Second Police Statement (Claims Eight and Nine)*

Marshall raises two grounds related to his police statements.  First, he contends that the admission of his audiotaped police statement violated his federal constitutional rights because he did not "validly" waive his right to remain silent.  His second ground asserts that he only made his second statement after the police made a false promise of leniency.

On May 13, 2003, the police approached Marshall's girlfriend, Tamara Woods, who directed them to his sister's apartment.  To that point, no arrest warrant related to Dean's murder

had issued.  Marshall, however, had an outstanding Class C Misdemeanor arrest warrant pending

for writing insufficient fund checks.  He was present in the apartment but refused to answer the

door.  At that time, the law enforcement officers forcibly entered the apartment, placed Marshall

under arrest and read the *Miranda* rights to him before transporting him to the Houston Police

Department, Homicide Division, where he was detained and questioned.

Beginning around 9:30 p.m., the night of his arrest, Marshall gave a lengthy videotaped

statement after, again, receiving Miranda warnings.  In fact, he made two statements.  In his first

statement, he admitted that he knew about the robbery.  He told officers that Greg Love, the

manager of the restaurant, had helped with the robbery plans.  He also admitted that he had

provided false license plates for use during the robbery.  The interview ended and Marshall

remained in custody.  The next morning, Marshall stated that he wanted to talk again with the

arresting police officers.  A second interview was conducted by the same police officer.  The

officer again read Marshall his rights prior to any questioning or statement.  During this statement

Marshall admitted to participating in the robbery/murder of Dean.

Marshall's trial counsel filed a pre-trial motion to suppress Marshall statements asserting

various statutory and constitutional violations in the taking of his statement(s).  He asserted that

Marshall's confession was not voluntary and was the result of promises of leniency.  Additionally,

he made claims of coercive and threatening actions directed toward Marshall and that the State did

not honor his invocation of his right to remain silent.  The trial court held a suppression hearing in

which Marshall and the officers involved in taking his confession testified.

Marshall's closing argument, in the suppression hearing, did not focus on the question of

coercion or the failure of the police officers to give Miranda warnings.  Instead, he argued that

Marshall was promised leniency if he gave a statement.  The trial court found that Marshall had

given statements freely and voluntarily and admitted the second statement into evidence.

Before the TCCA, Marshall argued that the trial court erred by admitting his statement into evidence after he had unequivocally invoked his right to remain silent.  The TCCA held that, even assuming Marshall ambiguously invoked his right to remain silent, officer did not proceed to question [him] about the offense.  The TCCA also held that the circumstances surrounding the period of questioning established that Marshall's response concerning the invocation of his right to remain silent was ambiguous at best.  In this circumstance, the officer is allowed to continue his questioning in order to clarify any uncertainty.

Because the TCCA adjudicated the merits of grounds eight and nine, Marshall must show that the Court's decision was contrary to, or an unreasonable application of federal law, for purposes of federal writ relief.  28 U.S.C. § 2254(d)(1).  Marshall argues that the TCCA applied the wrong law, that it unreasonably extended inapplicable law to his claim, and that the ultimate decision was wrong because the investigating officer "continued to ask questions" even after he invoked his right to silence.

Marshall's arguments against the TCCA's reasoning and conclusions fail.  The TCCA did not rely solely on *Davis v. United States*, 512 U.S. 452 (1994) as argued by Marshall.  Instead, it used *Davis* to lend support to its decision that, whether Marshall argues "right-to-remain silent" or "right-to-counsel", the investigating officer had a right to ask clarifying questions where an accused's response(s) are ambiguous.  *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

Considering the totality of the circumstances, this Court holds that Marshall has failed to show that the TCCA decision concerning ground eight was contrary to, or unreasonable application of federal law.  *Soffar v. Cockrell*, 300 F.3d 588, 594 (5th Circ. 2002) (citing *Barnes*, 160 F.3d at 224-225).  Similarly, Marshall's contentions concerning ground nine is without merit.

In ground nine, he argues that the trial court erred by admitting his second statement into evidence because it was made on the basis of a false promise of leniency.

The trial court did not find that Marshall was threatened, intimidated or otherwise coerced into making a second statement. The evidence shows that Marshall requested a second interviews. On appeal, the TCCA agreed. In this Court's view, the TCCA's decision was not unreasonable or contrary to federal law. Moreover, there is no proffer of evidence, beyond Marshall's claim that officer made a promise of leniency. Therefore, Marshall has failed to show that the investigating officer made a promise to him. Hence, he is not entitled to relief under the AEDPA.

The record also shows that Marshall persisted in his argument [ninth ground] about promises made to him. In his tenth ground, he argues that his trial counsel should have argued that his arrest was illegal because the basis for the intrusion into the apartment was a Class C misdemeanor warrant; hence, the intrusion was an unauthorized forced entry; hence, his arrest was illegal. Therefore, counsel's performance fell below an objective standard for reasonable representation.[3]

---

[3] Marshall raises two separate claims of ineffective trial representation (claims four and ten). Marshall only properly exhausted claim four in state court. Respondent argues that the Court should treat them both as one solitary claim, subject to AEDPA deference and the limitations of *Cullen v. Pinholster,* 563 U.S. 170 (2011). (Docket Entry No. 191 at 122-23). Respondent's argument finds support in *Nelson v. Lumpkin,* 72 F.4th 649 (5th Cir. 2023), a case addressing how to apply AEDPA deference when a petitioner's claim evolves between federal and state proceedings. In *Nelson,* the inmate slightly altered a *Strickland* claim when he came to federal court, arguing that it became a whole new *Strickland* claim which would sidestep AEDPA review. *See Nelson,* 72 F.4th at 659. Here, however, Marshall has raised different *Strickland* claims at different times based on different factual backgrounds and has briefed them separately in his pleadings. Somewhat in tension with *Nelson,* the *en banc* Fifth Circuit has criticized an inmate's attempt at "rais[ing] different claims at different times with different facts in the state court, then smush[ing] them all together into a single claim in federal court." *Lucio v. Lumpkin,* 987 F.3d 451, 472 (5th Cir. 2021). The *en banc* Fifth Circuit has directed courts to "analyze each claim as it existed at the time [the inmate] presented it to the state courts," *Id.* at 480, which in this case would require the application of AEDPA deference to claim ten and result in the procedural bar of claim four.

### B.    *The Strickland Standard*

Under *Strickland v. Washington*, 466 U.S. 668 (1984): an attorney's representation violates a criminal defendant's Sixth Amendment rights when his "*performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In a "highly deferential" review, the deficient-performance prong "measure[s] . . . an attorney's performance" for "reasonableness under prevailing professional norms" yet still "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 688-89. A petitioner must also show prejudice; meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694; *see also Wiggins*, 539 U.S. at 534. The Court turns now to Marshall's claims.

On state habeas review, Marshall raised two claims related to the circumstances surrounding his arrest. He raised: a substantive claim that his arrest was illegal because the police possessed only a misdemeanor warrant and, the same ineffective-assistance claim that he renews on federal review, *i.e.,* "trial counsel failed to raise the issue of [his] illegal arrest and the resulting taint to [his] custodial statements."

Marshall has not pointed to any federal constitutional prohibition against forced entry by police in possession of and based on a misdemeanor warrant. Hence, his federal claim depends on a showing that his arrest was illegal under state law and that the state courts would have suppressed his police statements because of his illegal arrest.

Texas law authorizes forced entry under some circumstances. Specifically, Tex. Code Crim. Pro. art. 15.25 states that in the case of a felony, an officer may break down the door for the

purpose of making an arrest when he refused admittance, after giving notice of his authority and purpose. The state habeas court found that the writ results would not have been different had trial counsel objected on that basis, because Marshall lacked standing to deny entry. His police statements were admissible as a result of his arrest, therefore, the TCCA ruling in *Jones v. State,* 568 S.W.2d 847, 858 (Tex. Crim. Appr. 1978). Hence, the outcome was not an unreasonable determination based on the fact and law. The state habeas court found no illegality in Marshall's arrest. Moreover, the TCCA found that the results would not have been different had counsel objected.

"In order to show that counsel was deficient for failing to object, . . . the objection must have merit." *Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008). An attorney does not provide deficient performance by making meritless objections. *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Applying Texas law, the state court found that Marshall's arrest was not illegal and thus trial counsel did not possess a valid objection to the arrest. Therefore, this Court will not re-examine the state-court determinations on the application of state-law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, the TCCA, relying on *Brown v. Illinois*, 422 U.S. 590 (1975) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)) , determined that Marshall's confessions were sufficient to purge any constitutional error. Hence, the state habeas courts were not unreasonable in finding that trial counsel's failure to object was not unreasonable in light of the fact any object would have lacked merit.

In his eleventh ground of error, Marshall alleges that evidence from an autopsy report performed by a member of the Harris County Medical Examiner's Officer was "testimonial" under *Crawford v. Washington,* 541 U.S. 36 (2004) and, therefore, inadmissible. An autopsy was

performed on the victim's body in 2003. However, by the time of trial, neither of the two doctors who performed the examination and prepared the report was still employed by the Harris County Medical Examiner's Office. When presenting the report, the State presented the testimony of another physician employed in the Department. He authenticated the report and was permitted to testify from the report and photos as part of the business records of Harris County. During his testimony, the State sought to introduce into evidence photographs and x-rays taken during the autopsy. The State argued that the evidence was "made in the ordinary course of business and should be admitted under the business records exception. The defense objected arguing that the evidence was more prejudicial than probative. However, the defense offered to stipulate to the cause of the victim's death, but the State refused. The trial court overruled the objection and admitted the exhibits.

Here, Marshall argues that the autopsy report and the accompanying photographs were "highly inflammatory" and, but for their admission, he would not have been sentenced to death. These records were offered and admitted during the punishment phase of the trial. The State asserts that no Confrontation Clause violation occurred because the autopsy report was not created as evidence against Marshall. The physician simply utilized the report and photographs to state his own opinions. Moreover, the State argued, the photographs were not testimonial; hence, the *Crawford* analysis does not apply. *See Crawford v. Washington,* 541 U.S. 36 (2004) to the penalty phase of a trial and, even if *Crawford* applies, the use of the report by the physician was harmless.

While there is an ongoing discussion in the courts concerning the use of autopsy reports and whether or not the use gives rise to a Confrontation Clause analysis, the resolution of Marshall's claim does not rest on that determination. First, the autopsy report was not prepared for the purpose of accusing Marshall of committing the offense. The report merely confirmed

what Marshall had already admitted was undisputed.  Nevertheless, even if the report and photographs, in some measure, were testimonial, the state court found that any error was harmless in light of the totality of the undisputed evidence.

The Fifth Circuit has held that there is no *Crawford* violation when the alleged hearsay evidence is used in sentencing.  *See United States v. Dinh*, 920 f.3d 307, 311-12 (5th Cir. 2019).  Importantly, the record fails to show that Marshall exhausted this claim at the state habeas court level.  In this circumstance, when a state court determines that an alleged error was harmless, a federal court may not award habeas relief unless the harmless determination itself was unreasonable.  *Davis v. Ayala*, 576 U.S. 257, 269 (2015).  The jury determined that Marshall fired the fatal shot killing Dean and that fact is undisputed.  Hence, the state habeas court's holding that the autopsy report added nothing to that finding, and Fifth Circuit's permissive use of such evidence during the punishment phase of the trial means that Marshall has failed to meet the AEDPA's standard for federal habeas relief.

### C. The Remaining Brady Error Ground for Relief

The Court returns to that aspect of Marshall's ground of error three where he makes a *Brady* claim.  He claims that testimony from the State concerning an altercation that he was allegedly involved in, and that occurred in the county jail while he was awaiting trial, was untrue.  He asserts that the State was aware of a witness that could have exonerated him but failed to disclose that witness' identity even through the State called other witnesses who testified that Marshall was involved.  Marshall asserts that the State had a duty to disclose any witness that might contradict the testimony of the State's witnesses.

The record shows that the State called jailed witnesses that accused Marshall of provoking an altercation.  The State asserts that it learned of the exculpatory testimony only after its witnesses

had testified.  The record shows, however, that before the State's presentation of evidence was concluded, Marshall learned of other witnesses and was able to present the testimony of one or more witnesses concerning the same altercation.  That testimony reflected that Marshall did not start the altercation but attempted to break it up.  Nevertheless, after the exculpatory testimony was received, trial counsel moved for a mistrial based on the State's delayed disclosure of the exculpatory evidence. The trial court denied Marshall's motion for a mistrial.

On direct appeal, the TCCA determined that the delay by the State in disclosing other witnesses or, the failed disclosure, was harmless because Marshall was able to present the exculpatory evidence in the same proceeding.  On federal writ review, the question is whether the TCCA decision was contrary to, or an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1)[4].

The Fifth Circuit has held that a *Brady* violation does not occur when the evidence is received in time for a jury to have use of it during the trial.  *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008).  The record shows that Marshall had use of the evidence during the trial, proceeding although tardy.  Nevertheless, the Court must decide whether the delay resulted in an AEDPA violation such that the State's conduct was harmless.  The Court holds that the TCCA finding that the late disclosure did not harm Marshall was not constitutionally unreasonable.  As well, there is no evidence that the TCCA decision was contrary to federal law.  Hence, the Court denies Marshall's *Brady* claim holding that the AEDAP standard for writ relief has not been met.

---

[4] The Court of Criminal Appeals succinctly denied this claim:

> We decide that any *Brady* violation was harmless primarily because the record reflects that [Marshall] was, in fact able to present to the jury the evidence that he claims the State failed to disclose in violation of *Brady*. *Cf. Hampton v. State,* 86 S.W.3d 603, 612 n. 26 (Tex. Cr. App. 2002). *See Marshall,* 210 S.W.3d at 636.

## V.    PROCEDURALLY BARRED CLAIMS

Procedural defects preclude federal writ consideration of several of Marshall's grounds for writ relief.  Hence, a federal court sitting in habeas cannot grant relief on claims that a petitioner has failed to present to the state courts because the AEDPA's exhaustion requirement is mandatory. *See* 28 U.S.C. § 2254(b)(1)(A). Marshall's original federal petition, nevertheless, raised numerous grounds for writ relief the first time.  Specifically, He did not give the state courts an opportunity to consider grounds of error one through seven, twelve, and thirteen.

On August 23, 2021, this Court stayed the case to allow the exhaustion of other grounds for relief in the state court, knowing well that Texas law does not guarantee a review of a "successive habeas".  Under Texas law, a successive habeas application may proceed when a petitioner could not raise the claims earlier, for example, "because the factual or legal basis for the claim was unavailable on the date of the previous application . . .."  Tex. Code Crime Pro. art. 11.071 § 5(a)(1).

On May 18, 2022, the state habeas court found that Marshall "failed to satisfy the requirements of Article 11.071, § 5(a) and, therefore, dismissed his writ application as an abuse of the writ without considering the merits of his grounds.  *Ex parte Marshall*, 2022 WL 1568941, at *1 (Tex. Crim. App. 2022).  Hence, Marshall could return to federal court.

Upon return, Marshall filed a second amended petition that includes his newly exhausted grounds.[5]  The exhausted grounds, one through seven, twelve and thirteen are ripe for federal consideration.  The Court notes that the TCCA's relied on article 11.071 as an "adequate and

---

[5] The Court considers the grounds of error exhausted for federal review purposes even though the TCCA did not consider the merits of Marshall's claims.

independent" basis to bar consideration of the defaulted claims and so it did. *See Mullis v. Lumpkin*, 47 F.4th 380, 389 (5th Cir. 2022); *Buntion v. Lumpkin*, 31 F.4th 952, 962 (5th Cir. 2022). In this regard, the Supreme Court has held:

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate *cause* for the default and *actual prejudice* as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a *fundamental miscarriage of justice*.

*Coleman*, 501 U.S. at 750 (emphasis added).

A petition shows cause by demonstrating "something *external* . . . that 'impeded [his] efforts to comply with the State's procedural rule.'" *Id*. at 753 (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Actual prejudice" requires a petitioner to "prove that the errors" 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A fundamental-miscarriage-of-exception occurs when the inmate shows actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993). Hence, Marshall must show that he can overcome the procedural bar of his procedurally deficient claims before the Court can consider their merits.

The Court will consider each of Marshall's defaulted grounds in state court and decide whether he has overcome the procedural bar before addressing the merits of any ground for relief. His argument that he is innocent will serve as a vehicle to allow federal review of his state barred grounds. Therefore, the Court will first discuss his twelfth ground—his actual-innocence claim—before turning to other barred claims.

I.      **Actual Innocence (Claim Twelve)**

In his twelfth ground for relief, Marshall alleges that his capital conviction and death sentence violate the Constitution because he is actually innocent of committing the robbery/murder of Dean. His actual-innocence arguments may be reviewed in two contexts: first, as a stand-alone constitutional (substantive) claim and, second, as a procedural mechanism as a vehicle for forgiving the default of other claims. Marshall asserts innocence in both contexts. The Court starts with the "substantive" claim.

A.      **Substantive Claim of Ground Twelve**

Marshall argues his innocence as a substantive ground for habeas relief. He defaulted consideration of an actual innocence ground by raising it only in his successive state habeas application. Thus, he makes the circular argument that his innocence should allow for substantive consideration of his actual-innocence claim. Be that as it may, actual innocence is not a cognizable ground for federal relief. The wealth of precedent defeats his arguments. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Schlup v. Delo*, 513 U.S. 298, 326 (1995); *In re Raby*, 925 F.3d 749, 755 (5th Cir. 2019); *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009). Federal habeas relief is, therefore, unavailable on claim twelve insofar as Marshall relies on it as a substantive basis for habeas relief.[6]

B.      **Fundamental Miscarriage of Justice**

Marshall also argues that his innocence ground should allow for federal review of his other barred claims because, not to do so, would result in a fundamental miscarriage of justice. Under

---

[6] Alternatively, this claim lacks merit. The Supreme Court has hypothesized that a valid actual innocence claim would require a "threshold showing" that is "*extraordinarily high*." *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (emphasis added). Such a showing would require "more convincing proof of innocence" than the fundamental-miscarriage-of-justice standard found in Supreme Court cases such as *Schlup v. Delo*, 513 U.S. 298 (1995). *See House v. Bell*, 547 U.S. 518, 555 (2006). Marshall has not shown that he is actually innocent.

*Schlup v. Delo*, 513 U.S. 298 (1995), a petitioner makes such a showing by proving his actual

innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Actual innocence means "factual

innocence," *Bousely v. United States*, 523 U.S. 614, 623 (1998). A petitioner "prove[s] a gateway

claim of actual innocence through *new and reliable evidence.*" *Merryman v. Davis*, 781 F. App'x

325, 330 (5th Cir. 2019) (emphasis added).

The Supreme Court has not specified when evidence is considered new or reliable other

than to say it includes "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence." *Schlup*, 513 U.S. at 324. The Fifth Circuit has observed that "[e]vidence does

not qualify as 'new' . . . if 'it was always within the reach of [an inmate's] personal knowledge or

reasonable investigation.'" *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) (quoting *Moore

v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008)). Moreover, it must be "'material, not merely

cumulative or impeaching.'" *Vega v. Johnson*, 149 F.3d 354, 364 (5th Cir. 1998) (quoting *Lucas

v. Johnson*, 132 F.3d 1069, 1076 n. 3 (5th Cir. 1998)).[7]  Nevertheless, out of an abundance of

caution the Court has examined each of Marshall's theories for writ relief.

### C.    Marshall's Actual-Innocence Theories

In his second amended petition, Marshall lists what he terms "new evidence", evidence

presented at trial that proves, of itself, that he is innocent. In this regard, he asserts:

(1)    the prosecution knew and believed that Worthy was inside the restaurant at
       the time of the murder;

(2)    the prosecution knew and believed Worthy carried a real, loaded gun during
       the robbery;

(3)    the prosecution knew and believed Kenny Calliham was lying when he

---

[7]  The respondent argues that AEDPA also limits what evidence the Court may consider when deciding whether
Marshall has shown his actual innocence. Respondent says that Marshall's actual-innocence evidence must meet the
requirements of 28 U.S.C. § 2254(e)(2).   The Supreme Court, however, has commented that section 2254(e)(2) does
not "address[] . . . a first federal habeas petition seeking consideration of defaulted claims based on a showing of actual
innocence" in which its "standard of review . . . is inapplicable." *House v. Bell*, 547 U.S. 518, 539 (2006); *see also
Rivas v. Fischer*, 687 F.3d 514, 551 (2nd Cir. 2012); *Vineyard v. Dretke*, 125 F. App'x 551, 554 (5th Cir. 2005); *Will v.
Thaler*, 2011 WL 13242888, at *4 (S.D. Tex. 2011).

testified at Marshall's trial that Worthy was not inside the restaurant at the time of the shooting and was not carrying a real gun;

(4)   newly obtained expert evidence demonstrates that Marshall's in-court identification was inherently unreliable and inadmissible and that, as a result, his identification should have been quashed;

(5)   eyewitness, Tony Ketchum, recanted his trial testimony at trial stating that the shooter held the gun in his right hand;

(6)   Worthy is left-handed, a critical fact that was not presented at Marshall's trial; and,

(7)   the prosecution knew and believed Derrell McQueen was the witness who reported that Worthy confessed to shooting the victim, yet intentionally hid his identity from the defense.

Any value in Marshall's actual-innocence argument lies in whether it raises reasonable doubt about his role as the shooter. Marshall does not provide any actual or conclusive proof that another person shot Dean. His petition simply repeatedly emphasizes differences between the testimony during his trial and that of his co-defendants. However, his co-defendants' testimony was consistent on the most important jury consideration, *i.e.,* that Marshall fired the killing shot.[8] Nothing suggests that the State ever believed, or any co-defendant tried to prove, otherwise.

Given the factual support for the jury's verdict, and weaknesses in Marshall's "new actual-innocence arguments", he has not proven factual innocence. Therefore, this theory fails. The Court denies Marshall's actual-innocence claim both as a substantive ground for relief and as a vehicle providing for federal review of the remainder of his barred claims.

### C-1.   Prosecutorial Misconduct (Claims One and Two)

In his first two grounds for federal habeas relief, Marshall argues that the State "knowingly presented false and misleading testimony and failed to correct the testimony it knew to be false" and "intentionally presented two conflicting and inconsistent theories concerning who fired the

---

[8]  For example, the State of Texas charged Worthy with capital murder, but proceeded under the theory that he was culpable as a party because Marshall had been the one who shot the victim. *See Worthy v. State*, 2007 WL 624667, at *5 (Tex. App. -Houston [1 Dist.], 2007).

fatal shot referring to his and his co-defendants' trials.  Essentially, he argues that the State adopted different theories concerning the crime in his and Worthy's trials.  In his trial, he asserts that the State presented evidence that he alone entered the Whataburger restaurant.  During Worthy's trial, he asserted that the State presented evidence that two suspects entered the restaurant.  This ground for relief fails because Marshall cannot meet the strictures of § 2254(e)(2): either the "new rule" principle or the "clear and convincing" evidence standard, *See Granger v. Lumpkin,* ___ F. App's ___, 2024, WL 3582651 at * 3 (5th Cir. July 30, 2024).  Moreover, Marshall cannot show that the State's theory for conviction in Worthy's case was unavailable to him when he filed his first state habeas application on July 5, 2006.  Finally, his argument that the information was unavailable *to him* personally, fails to reach AEDPA standards. Because Marshall did not develop that evidence in state court, it is not available on federal review.

### C-2.    Cause and Actual Prejudice

Next, Marshall argues that he can overcome the procedural bar of these claims by demonstrating cause and prejudice.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  In that review, "[i]t is well established that a failure to raise a claim in an earlier habeas petition may not be excused for cause if the claim was reasonably available at the time of the first petition."  *Prible v. Lumpkin*, 43 F.4th 501, 514 (5th Cir. 2022) (quotation omitted); *see also Ford v. Davis*, 910 F.3d 232, 237 (5th Cir. 2018); *Fearance v. Scott*, 56 F.3d 633, 636 (5th Cir. 1995).

Marshall has not shown any external impediment that prevented his attorneys from obtaining the information that he now offers.  Hence, there is no actual prejudice and no showing

that a reasonable probability exists that the result of the trial would have been different. *Strickler v. Green*, 527 U.S. 263, 289 (1999); *see also Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003).

### C-3. **Actual Innocence**

Marshall contends that a fundamental miscarriage of justice allows full federal review of his ground of "actual innocence." As discussed earlier and fully, concerning ground twelve, Marshall has not met the high standards required to show actual innocence.

### C-4. **Other Theories**

As "Additional Ways to Excuse Procedural Default," Marshall makes the following cursory arguments in an attempt to overcome the AEDPA procedural bar:

> To begin, Texas's state habeas system, at the time of Marshall's initial state habeas, was ineffective to protect Marshall's rights and was also an inadequate default to prevent the consideration of Marshall's federal rights. Texas's ineffective habeas system also serves as cause to excuse the default, and the merits of these three claims supply the prejudice. Additionally, Marshall's efforts to escape out from under the ineffective state system allow him to avoid the strictures of 28 U.S.C. § 2254(e)(2). Additionally, the [Court of Criminal Appeals'] determination that new evidence supporting these claims was available at the time of the initial state petition is factually incorrect, which renders the imposed default inadequate to bar federal review. Also, the [Court of Criminal Appeals'] finding of unavailability of the new evidence, discussed above, is not independent of federal law.

These arguments center on perceived defects in the state habeas process and alleged inadequacy in Texas' procedural law. This appears to be more an argument of bias than substance. However, infirmities in state habeas proceedings do not constitute cause to excuse a procedural default." *Bruce v. Cockrell*, 74 F. App'x 326, 331 (5th Cir. 2003).

In the remainder of Marshall's theories for relief, he contends that the State withheld exculpatory information.[9] The State's argument adequately summarizes Marshall's arguments as follows:

(1)    the State suppressed a portion of Worthy's interrogation video that identifies the Crime Stoppers tipster;

(2)    the State suppressed evidence that Worthy was more culpable because he possessed a real gun and entered the restaurant;

(3)    more than one co-defendant entered the Whataburger restaurant;

(4)    the State suppressed exculpatory results from fingerprint evidence;

(5)    the State delayed disclosure of Clarence Green's testimony;

(6)    the State delayed disclosure of impeachment evidence from the Dennis Meyer's interview tape;

(7)    the State failed to timely disclose exculpatory evidence from Mario Cadena;

(8)    the State failed to timely disclose impeachment evidence related to the punishment phase witnesses Israel Gonzales, Ronald Lee Dixon, David Harvey, and Leandrew Bradley; and

(9)    the State never disclosed post-trial evidence that, in a separate criminal proceeding, Kenny Calliham attempted to corruptly influence a witness.

The Court has already addressed Marshall's contentions regarding Mario Cadena. The remaining arguments are procedurally barred.

In his fourth and fifth grounds of error, Marshall raises numerous complaints about his trial attorneys' performance. He contends that his attorneys made several errors in the preparation for and presentation of their guilt/innocence defense. He also argues that his trial counsel presented

---

[9] Marshall alleges a pattern of suppression in this case which leads him to hypothesize that more undisclosed evidence exists. Marshall states that his amended petition contains "the suppression-of-evidence claims for which [he] presently has sufficient notice and factual basis to plead a *prima facie case*, but then does not identify evidence which has not come to light, but which he suspects may exist. Marshall premises these arguments on speculation and surmise, not on concrete allegations that he has already developed and litigated in state court.

an ineffectual and incomplete penalty defense. However, Marshall defaulted both claims. Hence, claims four and five are procedurally barred.

In his sixth ground for relief, Marshall alleges that "the combined prejudice from [his] trial counsel's ineffective representation and the State's misconduct and suppression of favorable evidence entitles [him] to relief from his conviction and [a] death sentence." This ground too, was not raised properly in state court, and because it was not, Marshall does not overcome the resultant procedural bar.

In his seventh ground for relief, Marshall argues that his "death sentence is the unconstitutional byproduct of pervasive racial discrimination" in the Harris County District Attorney's Office. He relies on: (a) studies examining the role of race in capital cases; (b) an analysis of similar prosecutions against white defendants; and (c) historical circumstances that he contends demonstrate bias against African-American defendants.

Marshall defaulted this claim by raising it in his successive habeas application. Nevertheless, he has not shown any external barrier to discovering the same information or data in his initial state habeas application. Importantly, he has not shown any impediment to developing this argument or presenting evidence in his own case. Hence, he has not overcome the procedural bar to this ground and, therefore, is not entitled to writ relief. Thus, this ground for relief fails.

Marshall's final ground for relief alleges that the trial judge was biased against him, as demonstrated by rulings on evidentiary issues. He did, in fact, file two *pro se* motions to recuse the judicial officer during his trial but did not raise this as a constitutional basis for relief until he filed his *pro se* arguments during his state habeas review. The state courts considered his *pro se* pleading to be a subsequent habeas application under Tex. Code Crim. Pro. art. 11.071. *Ex parte Marshall*, No. WR-71,752-02, 2014 WL 6462907, at *1 (Tex. Crim. App. Nov. 19, 2014), and

dismissed his pleadings as an abuse of the habeas writ.  That dismissal operates as a bar to federal

habeas review.  *See In re Hall*, 2023 WL 8798032, at *2 (Tex. Crim. App. 2023).  Because

Marshall has not shown any external impediment that prevented him from raising this claim on

direct appeal or in his initial state habeas application, this claim, too, is procedurally barred.

## CONCLUSION

The Court has considered Marshall's petition in light of the briefing, the record, and the

law.  Any of Marshall's arguments not specifically discussed herein are denied.  Hence, the Court

**DENIES** Marshall's federal petition for a writ of habeas corpus.

It is so ORDERED.

SIGNED on March 31, 2025, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge